The State v. William (Billy) Tucker, Appellant.—62 S. W. (2d) 453.

Division Two, June 24, 1933.

*George Munger* for appellant.

*Stratton Shartel,* Attorney-General, and *James A. Finch, Jr.,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant was charged with burglary and larceny by information filed in the Circuit Court of Stoddard County. Upon trial he was acquitted of the burglary charge, but he was found guilty of grand larceny and his punishment was fixed at four years' imprisonment in the State penitentiary. From the judgment and sentence he appealed.

I. Two preliminary assignments of error first should be examined. The initial error charged is the action of the trial court in overruling what appellant termed a motion in abatement of the trial. On August 17, 1931, appellant by proper proceedings disqualified Honorable W. S. C. Walker, then Judge of the Circuit Court of Stoddard County, and the court, Judge Walker presiding, designated Honorable Frank Kelley, Judge of the Twenty-eighth Judicial Circuit, as special judge to try the cause. Judge Walker died October 27, 1931, and when the cause came on for trial before Judge Kelley on November 3, 1931, appellant moved the court to abate and postpone immediate prosecution and hearing. The reasons given were, first, Judge Walker having died and his successor not having been appointed, there was no regular judge of the Circuit Court of Stoddard County. Second, the death of the regular judge worked an adjournment of the August Term, and no special term had been called. In this connection it should be stated that on August 26, 1931, the court, Judge Walker presiding, set the cause for hearing before

Judge Kelley on October 5, 1931. On the latter date, Judge Kelley being unable to attend, the court reset the case for trial on November 2, 1931. Judge Walker, as stated, died in the meantime. The third reason assigned for the postponement was that the right to try the cause inhered in the successor of Judge Walker and there was no necessity for calling in an outside judge. Appellant, in his brief, confesses his inability to find authority to support his position. But in his motion for a new trial he assigned as error the action of the court in overruling the motion. Hence the question must be examined.

■ Section 3648 (4 Mo. Stat. Ann. p. 3202), 1929, states the grounds of incompetency of a circuit judge to try a criminal prosecution. The fourth cause of incompetency arises when the defendant shall make and file an affidavit, supported by the affidavit of two other persons, that the judge of the court in which the cause is pending will not afford him a fair trial. Appellant in the instant case disqualified Judge Walker under this statute. Section 3651 (4 Mo. Stat. Ann. p. 3206), 1929, provides that in case of disqualification for any of the causes stated in Section 3648, the judge of the court shall set the case down for trial on some day of the term or on some day as early as practicable in vacation, ''and notify and request another circuit or criminal judge to try the case; and it shall be the duty of the judge so requested to appear and hold the court at the time appointed for the trial of said case; and he shall, during the trial of said case, possess all the powers and perform all the duties of the judge at a regular term of said court, and may adjourn the case from day to day, or to some other time, as the exigencies of the case may require, and may grant a change of venue in said case to the circuit court of another county in the same circuit, or to another circuit or criminal court; and when said cause shall be removed to the circuit court of another county in the same circuit, it shall be the duty of the judge so requested to appear and hold the court at the time set for the trial of said case in the circuit court of the county to which said case shall be removed.''

In cases in which a party questioned the right of the circuit judge who presided at the trial to sign the bill of exceptions (State ex rel. v. Atchison, Topeka and Santa Fe Ry. Co., 270 Mo. 251, 192 S. W. 990), or to pass upon a motion for a new trial (Riggs v. Owen, 120 Mo. 176, 25 S. W. 356), because the trial judge no longer had jurisdiction in the county in which the cause had been tried, this court has held that the trial judge had such authority to act despite the fact that, by reason of changes in court circuit boundaries, the county in which the cause had been tried was no longer in his circuit. In the case of State v. Gordon, 196 Mo. 185, 95 S. W. 420, in the Circuit Court of St. Francois County, in the Twenty-seventh Judicial

Circuit, the defendant by an affidavit of prejudice disqualified Judge Anthony the regular judge, and the latter called in Judge Davis of the Fifteenth Circuit as special judge. At the trial the defendant was found guilty on November 24, 1904. It was discovered, after Judge Anthony's term had expired and after Judge Killian, his successor, had taken office, that final judgment had not been entered upon the overruling of the motion for a new trial. Thereupon, on February 21, 1906, Judge Davis, the special judge in the case, entered judgment *nunc pro tunc*. This action was sustained. The principle of these cases is thus stated in State ex rel. v. Atchison, Topeka and Santa Fe Ry. Co., 270 Mo. 251, 192 S. W. 990, l. c. 993: "The judge of the circuit court is a judicial officer of the State whose powers, in whatever county they may be exercised, rest upon his election and qualification by his oath of office, and that whenever, in the performance of his official duty, he enters upon the trial of a case he acts within the limits of his official authority, which continues until the duty is performed or he goes out of office. This capacity results from the nature of the duty, and has always been recognized by this court. [Woodfolk v. Tate, 25 Mo. 597; Cocker v. Cocker, 56 Mo. 180.]" In view of the plenary powers with which Section 3651 vests a special judge, and under the authorities cited and quoted, we are of opinion that Judge Kelley retained jurisdiction of the instant case after the death of Judge Walker. This assignment therefore is ruled against appellant.

II. The second error is assigned to the order of the court, overruling appellant's application for a change of venue on account of the prejudice of the inhabitants of Stoddard County. The application was supported by the affidavits of five citizens residing in different neighborhoods of the county as required by the proviso of the statute (Sec. 3630, R. S. 1929), in cases in counties having a population of less than 75,000. But the application and the supporting affidavits were filed after the case was called for trial and after the plea in abatement, which was in effect a motion for a continuance, had been filed and overruled. The statute (Sec. 3630) provides that reasonable previous notice of the application for a change of venue shall be given to the prosecuting attorney. It does not appear that any notice was given in the instant case. Although the application was filed on the day that the case was called for trial, namely November 3, 1931, yet it recited that knowledge of the fact of the prejudice of the inhabitants of the county came to appellant after the disqualification of Judge Walker, that is, after August 17, 1931. The record shows that Judge Walker set the case for trial before Judge Kelley on October 5, 1931, and that on the latter date, he reset the case for November 2, 1931, at the request of Judge

Kelley. In these circumstances the application for a change of venue properly was overruled, for want of notice and because it was filed after the trial had begun, although the application recited that knowledge of the facts alleged had been received quite some time before. [State v. Beebe, 2 S. W. (2d) 712; State v. Parker, 324 Mo. 734, 24 S. W. (2d) 1023.]

■ III. Appellant did not question the sufficiency of the evidence by demurrers, motion for new trial or assignments of error. The testimony showed that sometime during the night of June 2, 1931, an automobile filling station at Dexter, Missouri, was entered by force and property consisting principally of tires, tubes and a radio, worth altogether about $300 was stolen. About ten days later, one Loren Cox led the owner and the authorities to a point in a drainage ditch in which the bulk of the property had been hidden and from which it was recovered. Cox, on behalf of the State, testified, that about one o'clock on the night of the crime charged, he met appellant at an ice plant in Dexter; that Cox had his father's automobile; that appellant induced him to drive to the filling station; that appellant got out of the car at the station and directed Cox to drive off, but to return in fifteen minutes; that when he returned, appellant took charge of the car, backed it into the station and loaded it with stolen property, and drove to Poplar Bluff to find sale for the stolen property. The tires, tubes and radio later in the night were hidden in the ditch from which they were recovered. Appellant, by his testimony, reversed the parts played by him and by Cox. Appellant testified that Cox got him to go riding; that Cox stopped at the filling station, stepped out of the car, told appellant to drive away and return later; that appellant did so, and that upon his return Cox placed in the car tires, tubes and other articles; that Cox drove the car to Poplar Bluff that night and tried in vain to sell the property, and finally that Cox hid the property in the drainage ditch. Several witnesses testified to the presence of appellant and Cox in Dexter that night; to the fact of their departure together from the ice house in Dexter where appellant had been working; and to other facts and circumstances concerning which Cox had testified. According to appellant he was an innocent bystander of the offense committed by Cox. But there was an abundance of evidence to support the finding of the jury that appellant was guilty of the larceny of the property taken from the filling station.

■ ■ IV. Appellant complains of the refusal of the trial court to give Instruction A which is as follows: "You are also instructed that unless you are convinced by the evidence beyond a reasonable doubt that the defendant incited, caused or in some way actually

participated in the burglary and larceny or in the burglary committed on the night of the 2nd of June, 1931, you cannot convict him of such burglary or larceny even though you may be convinced beyond a reasonable doubt that defendant rode to the place where such burglary and larceny was committed in the car in which said burglar went to such filling station and also went away with him to Poplar Bluff or Bloomfield in the car with the stolen goods.'' This court has often ruled ''that the defendant in a criminal case is entitled, upon request, to an instruction setting forth the converse of the State's instruction on the principal fact.'' [State v. Hayes, 247 S. W. 165, l. c. 168, and cases cited.] The latest statement of the law is to be found in the case of State v. Ledbetter, 332 Mo. 225, 58 S. W. (2d) 453, decided by this Division on April 20, 1933. In that case we said: ''We have uniformly held that where a defendant in a criminal case formulates and asks an instruction that correctly declares the law which is the converse of the State's principal instructions, it is the duty of the trial court to give the same. And it is reversible error to refuse such converse instruction *unless the State's instructions clearly submit the converse of the facts and issues upon which convictions are authorized.*'' (Italics ours.)

In the instant case the court gave on behalf of the State six instructions, of which two covered the charges of burglary and larceny; two, the charge of burglary and two the charge of larceny. Of each pair of these six instructions, one predicated conviction upon a finding, beyond a reasonable doubt, that appellant actually broke into the building or that he stole and carried away the goods, or that he did both. The second instruction in each pair predicated conviction upon a finding that, while another or others actually committed the acts of burglary or of larceny or of both, yet that appellant was present, aiding, abetting, encouraging or ready if necessary to aid, assist or encourage such other person or persons in the criminal acts imputed to such other persons. The first instruction of each pair so given on behalf of the State concluded with the clause: ''And if you do not find the facts to be as set forth above you will acquit the defendant.'' The second instruction of each pair closed with the words: ''Unless you so find the facts you cannot find him guilty of so aiding, abetting, encouraging or ready to do so.'' In our opinion these converse clauses in these six State instructions did not so fairly and fully present to the jury appellant's defense as to justify the court in refusing to give his requested Instruction A. But appellant's Instruction A is not a correct statement of the applicable law. It unduly minimizes, if it does not in fact destroy, the evidential values of the conceded facts that appellant rode to the filling station with ''said burglar,'' and also went away with him from the filling station ''in the car with the stolen goods.'' Because we are of opinion

that Instruction A is not a correct converse statement of the law, we rule that the refusal of the trial court to give that instruction is not error.

■ V. Appellant complains that given Instructions 4, 6 and 8 were prejudicially repetitious. Appellant was prosecuted for the offenses of burglary and larceny in one count of the same information as the statute (Sec. 4056, R. S. 1929) authorizes. We have seen in the preceding paragraph that three pairs of instructions were given on behalf of the State. These were Nos. 3, 4, 5, 6, 7 and 8. One pair dealt with burglary and larceny, a second with burglary only and a third with larceny only. The first instruction of each pair predicated a verdict of guilty upon a finding by the jury that appellant did the acts necessary to constitute the particular crime. The second instruction predicated a verdict of guilty upon a finding that appellant was present, aiding, abetting or encouraging another or others in the doing of the acts constitutive of the particular crime. The criticized Instructions 4, 6 and 8 were of the second class. Appellant under the evidence might have been found guilty of burglary or larceny or of both. Or he might have been convicted of one, and acquitted of the other charge, or he might have been acquitted of both. And he might have been convicted of the one crime or the other or of both upon a finding by the jury that appellant himself committed the constitutive acts or that he was present aiding and abetting another. It was proper therefore, that all these contingencies should be contemplated by distinctive instructions. In fact he was convicted of larceny and acquitted of the charge of burglary. This result would indicate that appellant's cause was not prejudiced by these instructions.

■ VI. Appellant predicates prejudicial error upon the use in Instructions 4, 6 and 8 of the phrase ''and another person or persons.'' It is true, as stated in appellant's brief that ''there was no evidence, facts or circumstances in the case indicating that more than two persons, defendant and Loren Cox, were in any wise connected with this burglary and larceny.'' It seems to us that the foregoing statement is so indisputable under the evidence, that there is no prejudice whatever in the words ''or persons,'' appearing in the instructions, even though those words made the instructions broader than the evidence. The assignment therefore is ruled against appellant.

■ VII. Appellant criticizes given Instruction 11 which told the jury that ''if you find that any witness has wilfully sworn falsely to any material fact at issue in this cause, you should disregard

such part of his or her testimony and are at liberty to disregard the entire testimony of such witnesses, which you may conclude from all the testimony is not worthy of belief.'' He complains that the instruction did not tell the jury in positive terms to disregard false testimony but that it merely said they were ''at liberty'' to disregard it. It is to be observed that the instruction informed the jury that they ''should,'' that is to say it was their duty, to disregard such part of the testimony of any witness to any material fact as the jury might find as false, and that they were ''at liberty'' to disregard the entire testimony of any such witness. A positive direction by use of the word ''should'' to disregard any or all of the testimony of any witness whom the jury might find had sworn falsely to any material fact caused this court to reverse the case of State v. Waller, 259 S. W. 445. The instruction as given was approved in State v. Richardson, 267 S. W. 841; State v. Hicks, 92 Mo. 431, 4 S. W. 742, and State v. Hale, 156 Mo. 102, 56 S. W. 881. ▮ Appellant further objects that the instruction did not define ''any material fact at issue.'' Without deciding whether the phrase should have been defined, we may observe that given Instruction 10 made mention of ''matter material to the issue, that is, matters connecting the defendant with the commission of the crime charged against him and identifying him as the perpetrator thereof.'' Whether the latter is a good or sufficient definition, appellant does not complain of it, and it answers his objections to Instruction 11.

No reversible error appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.