**STATE of Missouri, Respondent,**

v.

**John E. TURNER, Appellant.**

**No. KCD 28062.**

Missouri Court of Appeals,
Kansas City District.

June 1, 1976.

Thomas M. Larson, Lee Nation, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant was charged by information with carrying a concealed weapon "loaded with gunpowder and leaden balls." He was tried by a jury and convicted. Because the jury was unable to agree upon a punishment, the court fixed defendant's punishment at three years imprisonment. He timely appeals, claiming: (1) that there was a fatal variance between the information and the verdict directing instruction, on the one hand, and the evidence on the other; and (2) that the State failed to introduce sufficient evidence to sustain the conviction. Affirmed.

On December 24, 1974, two Kansas City, Missouri Police Officers were riding in a patrol car near a tavern known as the Prestige Club when they met with an informant. He told the officers that a Negro male had approached him inside the club and tried to sell him a .38 caliber handgun. The informant described the suspect as being about six feet tall, weighing about 170 pounds, and wearing a brown Robin Hood hat and a long coat. He also told them that after the man had attempted to sell the handgun to him he saw the man go into a back room of the club used for gambling.

The officers requested backup assistance from a group of other patrolmen, and went to the club. When they arrived they entered through the front door, secured the tavern area, and went into the back room. As they burst through the door, one officer told everyone to stand and place their hands on a wall. He saw defendant reach under his jacket, which covered his torso, and remove a gun from the waistband of his trousers. The other officer saw defendant push his coat back two to three inches, which exposed the handgrips of a revolver,

and then defendant pulled the gun from his waistband. This officer immediately reached out and grabbed defendant's arm, which caused defendant either to throw or to drop the gun to the floor. The first officer inspected the gun and discovered that it was unloaded. Defendant was then arrested for carrying a concealed weapon.

Prior to trial, defendant filed motions to suppress evidence of the seized gun and to disclose the identity of the informant. During the hearing on these motions, the officers gave widely different versions of how they met with the informant and how he told them the defendant was carrying a concealed weapon. According to one officer, they were sent by the police dispatcher to meet with the informant at 27th and Cleveland. When they arrived the informant approached the car, got in with the officers and told them that the defendant was carrying a concealed weapon in the Prestige Club. The other officer testified that they were driving along 27th Street at approximately Jackson when the informant came out, flagged them down, and told them to meet him at 27th and Cleveland. When they arrived at 27th and Cleveland, one officer left the patrol car and got into the informant's vehicle. The other officer parked the patrol car parallel to the informant's car and remained in the patrol car. The officer who entered the informant's vehicle did not know whether his partner had actually overheard the informant tell him that defendant was carrying a concealed weapon. From this point on the testimony of the two officers is largely the same.

## I.

■ The verdict directing instruction given the jurors told them that they must find from the evidence that the .38 caliber revolver defendant was carrying was "loaded with gunpowder and leaden balls" in order to find him guilty of carrying a concealed weapon. The evidence introduced by the State indicated that the gun was not loaded. The defendant contends that this variance between the evidence and the instruction allowed the jury to consider a false and prejudicial fact in reaching the verdict, and that this constitutes prejudicial error entitling him to a new trial. In support of this claim he relies primarily on *State v. Agee*, 474 S.W.2d 817 (Mo.1971), where, after first noting that as a general proposition of law an instruction should not be given in the absence of supporting evidence, the court went on to hold that there was evidence to support the there challenged instruction. Defendant also interweaves into this point a complaint that the proof fails to support the allegation of the information that the gun was loaded.

Defendant's challenge here is similar to one recently considered by this court in *State v. Scott*, 534 S.W.2d 537 (Mo.App. 1976). In that case the defendant contended that the verdict directing instruction was erroneous as not supported by the evidence because it required a finding that money taken in a robbery belonged to one Harold Tramell and was taken with intent to deprive him of his property, while there was no evidence showing that the money belonged to Tramell. The court noted that while generally an instruction broader than the evidence or at variance with the charge is improper, the error may be harmless if the defendant's cause is not prejudiced. In that case there was proof that the money was taken from the person in charge of Harold's Furniture Store against her will and that the money did not belong to defendant. Under the given instruction this evidence was sufficient to support findings that the defendant took money not belonging to him with the intent to deprive the owner of his property. Thus, the State was not required to prove the money belonged to Tramell, and the lack of such proof was not prejudicial to defendant's cause.

In the case at bar, it must be conceded that there is no evidence to support a finding that the concealed weapon was loaded at the time of defendant's arrest. In fact, the only evidence in the record is that the weapon was empty. For this reason the instruction was broader than the evidence and was improper. Nevertheless, since it

was not necessary to show that the concealed weapon was loaded in order to prove the crime of carrying a concealed weapon, *State v. Dorsey,* 491 S.W.2d 301 (Mo.1973), it is obvious that under the holding in *Scott,* words in the information and in the instruction to the effect that the concealed weapon was "loaded with gunpowder and leaden balls" are mere harmless surplusage.

The lack of prejudice to defendant is emphasized by the nature of his defense. Only he and his wife testified in his behalf, and both of them denied that defendant had possessed the gun. They disputed the prosecution witnesses on the fact of possession, with no regard to whether the gun was loaded or unloaded. The condition of being loaded or unloaded not only had no legal significance, but additionally it never became a contested factual issue at any time. The surplus language in question could not have affected defendant's preparation for trial or prejudiced the jury determination.

## II.

Defendant also contends that the police officers' testimony concerning the informant's information was so contradictory that the entirety of their testimony cannot be believed. Since their testimony is the only evidence of record establishing that defendant possessed the .38 caliber revolver and that it was being carried concealed, defendant argues that the alleged defective nature of this testimony destroys the State's case.

In support of this position defendant relies exclusively upon *State v. Williams,* 481 S.W.2d 1 (Mo.1972), where the court held that the State failed to make a submissible case to prove a concealed weapon charge because the State's sole witness on the issue of concealment told the court several different versions of how and where the weapon was "concealed" when he discovered it. The court noted that:

> " 'Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one ver-

sion thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted.' "

■ Defendant's reliance on *Williams* is misplaced. *Williams* involved the contradictory testimony of a single witness exclusively relied upon by the State to prove the critical issue of concealment. In the case at bar, defendant asserts that the testimony of two State witnesses conflict. Traditionally in such cases " '[m]erely because testimony is conflicting its probative force is not destroyed.' " *State v. Cox,* 478 S.W.2d 339, 341 (Mo.1972). So long as there is sufficient evidence in the record to support the conviction, Missouri courts allow the fact finder to determine which particular State's witnesses it chooses to believe, since it is the fact finder's province to resolve any conflict in the evidence. In *State v. Smart,* 328 S.W.2d 569 (Mo.1959), a second degree murder case, the court found the testimony of one of the State's witnesses that the defendant had walked up to the victim, "stuck the gun in his face," and after a 10-second pause shot the victim, was sufficient to support a jury's finding that the defendant was guilty, even though other State's witnesses told contradictory stories.

■ Aside from that fatal flaw, defendant's point otherwise lacks merit. It must be noted that the testimonial inconsistency relied upon by defendant to destroy the probative value of the police officers' testimony occurred in the course of the preliminary hearing on motions to suppress and to disclose the identity of the informant. No point is made on this appeal respecting the overruling of those motions, and the evidence taken in respect to those motions is therefore now irrelevant. The testimony of the officers at the trial proper is remarkably similar. The primary difference between their trial testimony is that one officer told the court that defendant

854

threw the revolver down, while the other testified that he dropped the weapon. Since this and the other "inconsistencies" relied upon by defendant bear upon the credibility of the witnesses and not upon legal sufficiency of their testimony, his argument is without merit.

Affirmed.

All concur.